Paul Harris May it please the Court, Your Honors, I'm Paul Harris. I, along with James McClure, represent the appellant, Dr. Stephanie Swart. And you're no kin to Judge Harris, right? I don't think she would claim me if that were in fact the case. But I'm flattered by the question, Judge Motz. Your Honors, we maintain the district court, Judge Keeley, was correct in the analysis she employed to dismiss appellee MRA's counterclaims against the appellant. And so finding that Dr. Pawar, the other doctor in the practice, did not have authority to But we maintain that Judge Keeley should have used that very same analysis in determining that the remand issue, that Dr. Pawar did not have authority to consent to the removal of the action from state court. And there wouldn't have been unanimity with respect to all defendants removing and therefore under the federal statute, remand would have been appropriate. So what happened was near the end of the case, Judge Keeley, we think got it right in analyzing the Pennsylvania statute in dealing with corporations under the unique facts of this case. But she should have done that on the remand issue because then we wouldn't be here. And there wouldn't have been these complicated questions, choice of law questions, in really dealing with run-of-the-mill state law claims. And so in this case, appellee MRA had two shareholders, Dr. Swart, my client, and Dr. Pawar, each owned 50% of the corporation. And MRA had two directors, Dr. Swart and Dr. Pawar. And under Section 1721A, as the district court found of the Pennsylvania Business Corporations Law of 1988, the corporation's management is solely the province of the board of directors, unless it's delegated in the bylaws. And then Judge Keeley looked to Section 1502 and used, I think, the plain language of that section, which provides that the general powers for the corporation to sue and be sued, complain, defend, and participate as a party or otherwise in any judicial proceeding in its corporate name rests with the board of directors. Judge Keeley found that that's specifically within the province of the board of directors. In reaching the conclusion that Dr. Pawar could not bring the counterclaims against his co-director and 50% shareholder, we don't understand why Judge Keeley didn't use that analysis to remand the case. We filed the motion to remand. We specifically put in the motion, there's some procedural issues, which we put that the law of the case was that MRA's principal place of business was West Virginia. But leaving that procedural issue aside, we put in our motion to remand that, indeed, Dr. Pawar, as the president of the corporation, did not have the vested authority to agree to removal. And what did Judge Keeley say? Because that's not in the joint appendix. She doesn't say. She gives a one-liner which essentially says the plaintiff's motion is denied. Motion for remand, which is why we're struggling with this now, because we respect Judge Keeley. She's... Well, wouldn't the theory be, I mean, I'm just... The power to defend, participate in lawsuits, it rests with the board of directors, unless it's been delegated to the president. And so the theory would be that this kind of general delegation over general and active management of the business is enough to reach sort of an ordinary decision that, of course, you're going to defend against a lawsuit, but not to sue a 50% shareholder. Well, that's correct, Judge Harris, but we think Judge Keeley's analysis on that point was, indeed, correct, because she went and looked at the specific language of the bylaws, and then she took Pennsylvania case law and said, under these set of circumstances, given the case law, given the broad language, it's not precise enough. And Pennsylvania courts have held that a president cannot get involved in litigation without the approval of the board, except for, there's a limited exception that Judge Keeley found, and I think it's consistent with Pennsylvania case law, if it's a collection action. And here... Those cases were about initiating a lawsuit. Well, but we think, under the plain language of the statute... This is a question about how much you can get out of that delegation of authority of general and active management of business. And so the question is going to be whether there's any way to distinguish defending a lawsuit, which might be seen as part of the ordinary course of corporate business, versus suing a 50% shareholder, which the district court said falls outside the scope of kind of ordinary business decisions. The Judge Keeley didn't make that distinction, but our argument is, the statute itself spells it out and makes the distinction. The statute says, unless it has been delegated. And so what really matters is the scope of the delegation in this case, right? Well, I think so. And, but I... Tell me, let me, let me phrase my question as directly as I can. Tell me why I am wrong. Assume for a minute, I'm not saying this is what I think, but I want you to respond to this to the president to take on the general and active management of the business. The district court said that is too broad, too general to encompass such an unusual situation as suing a 50% shareholder. So that is not covered. Why might it not still be the case that deciding to defend your corporation against a lawsuit, which is a very ordinary thing to do, is covered by that delegation? There are two reasons. Okay. The first is Judge Keeley's analysis of the McGuire case and Aramski case was correct when they dealt with the issue of bringing the case. We recognize that. That's not a reason. That answers my question. So what's your second reason? We, we think we have a situation where educated parties, both medical doctors, they originally had three doctors in the group, one left. At that point, they both agreed within the language of the bylaws to say the directors have the general management of the corporation and there were only going to be two. Any reasonable person under those set of circumstances is going to know that you're going to have problems later unless you get along. And so we think because it's a 50-50 split under the law, you're, you're setting yourself up. I'm not understanding that you're responding to Judge Keeley. No, no, no. But you're setting yourself up for a stalemate situation by failing to put precise language in the delegation to the president. Precise language that gave the president the authority to make decisions involving litigation. The parties in and of themselves set themselves up for this and, and I hate to say the chips fall where they may, but they do. And so. Say this had gone to the board of directors, right? So your argument is this had to be decided by the board of directors. There's two directors, right? Wouldn't Dr. Swart have to recuse herself? I mean, if the question is whether to defend a lawsuit against her. There's an, there's an issue in the bylaws about conflicts of interest. That seems like a conflict. Well, except that they're governed by the plain language of the bylaws and that deals with issues involving outside contracts and outside business opportunities. Dr. Swart could vote as a director of this corporation about whether the corporation should defend a suit brought by Dr. Swart. She could say no, she could, she could vote no. We would be litigating that Judge Harris, but we never get to that because Dr. Pawar never made the request. He never. I feel like this case is going to come out the same way either way, because there's no way she can vote on that. Well, he. As a director of a corporation, whether the corporation, whether the corporation should defend itself against a lawsuit she is bringing against the corporation for money. You think she can vote on that? I don't think so. I don't either. But I think we're, but I think we're speculating, Judge Harrison, we don't need to reach that point under the facts of this case because Dr. Pawar never noticed a meeting under the bylaws. But it would be a futile act. And where does your argument go if you concede that she couldn't have voted? It's a totally futile act. It doesn't have to engage in futile acts. I concede that it's speculation, Your Honor, with respect to that. And the courts should not look in deciding this case to that eventuality when you're federalism concerns in which the court has routinely held over and over again that remand issues must be strictly complied with. And you don't have that here. That's my position. And so to reach for the facts and say this might have happened and that might have happened if Dr. Pawar had sent the notice and said we want to defend this, the court need not reach that decision. That's our position with respect to that. It's too far. You don't have to reach it. Go ahead. I'm sorry. You have a limited amount of time here. And it's evaporating. So if you stay with one issue, fine. OK. But here's the point. And it transitions into this issue of the internal affairs doctrine with a more significant relationship exception. We put that in there because we believe having to litigate in state court should have come as no surprise to any of the parties in the case. The filings made with the West Virginia Secretary of State's office provided that the principal office, I think that was the exact phrasing used, was in Morgantown, West Virginia. MRA's principal place of business was in Morgantown. It read films for hospitals exclusively in West Virginia, in Morgantown, in the southern part of the state, and also in Kingwood, West Virginia. And except for any billing, legal, or accounting work, which is all delegated out contractually to third parties, all of the work was done in West Virginia. And so we can see how Judge Kealy would say the internal affairs doctrine applies here because the place of incorporation of MRA was Pennsylvania. And you look to that. But we believe that the more significant relationship exception in the facts that all the work was done in West Virginia would apply here. And what difference would it make? I didn't catch the part in your brief where you say why it matters. Yeah, indeed, Judge Harris, as I was preparing today and last night, I was wondering the same question with respect to that. But the issue is this. We think that West Virginia law, I looked up a case called Webco. It's not in the briefs. It's a West Virginia case. It seems to speak in terms of situations like this where you have shareholders having problems with one another in a closely held corporation being able to bring an individual claim as opposed to a derivative claim. Now, that case was written by Justice Miller from Wheeling, who sat on the West Virginia Supreme Court, and was decided at a summary judgment stage and was reversed and remanded back to the circuit court and state court in West Virginia. I think it's from 1980, the Webco case. I can find the site when I stand back up. But that case dealt really with the circumstances surrounding a domination of the other shareholder with respect to acts taking place. And that's why we pled in our complaint that Dr. Pewar was running MRA as if it was his own company and doing things. And so we kind of, we believed that West Virginia law would help us with respect to that issue. So to answer your question, Judge Harris, that's why we think it makes a difference. And finally, with respect to the third issue we raised in the case, clearly Judge Keeley was correct when she determined that some of the claims of Dr. Swart were derivative in nature. I don't think there's any question about that. But we also think there were individual claims, apart from her being a shareholder, which would have permitted Dr. Swart to proceed forward on her fraud claim against Dr. Pewar. She had a contract as an employee. There was a claim of lost wages related to that contract as an employee. Does her complaint allege a breach of her employment contract? It does not. It falls under the phrasing of fraud, because we think what was happening in the case was to a breach of contract. Causing Dr. Swart to be suspended by falsely claiming she didn't have her continuing medical education hours hurts her personally in her profession or business, but in her personal profession, because the revocation of privileges at a hospital by a doctor or of a doctor can have serious ramifications. And so we think those facts, Dr. Pewar telling the billing people to not pay Dr. Swart and her being shorted on her hours for her work with respect to the employment contract, we think all of those relate to individual injuries and fall outside the purview of, as Judge Keeley said, the injury rule. I see my time is up, and I'll retire to my seat unless there's a specific question. Thank you very much. Thank you. Good morning, Your Honors. Michael Baggett on behalf of Monongalia Radiology Associates and Dr. Pewar. Judge Keeley got it correct when she indicated initially that under Pennsylvania law, there is no fiduciary duty between 50-50 members in an LLC, and that's been substantiated by recent cases in 2016. So that part of the case is correct. The question then is, we move on to the next issue for Dr. Pewar because the court dismissed Dr. Pewar's claims, one, asserting that he did not have the authority to bring the claim on behalf of MRA as its president. Then she went on to say that he did not make a demand to satisfy Rule 23-1 in terms of his derivative capacity because in paragraph 161 of the counterclaim, Dr. Pewar asserts that he brings the claim as president of MRA, and in the alternative, he brings this claim in his derivative capacity as a shareholder of MRA. So when Judge Keeley dismissed the derivative action failure to plead under Rule 23-1, and that requires a pleading that a demand was made or why a demand wasn't made, the judge says that Dr. Pewar did not satisfy that requirement. The case law indicates that 23-31 is a procedural aspect, but you then have to look to the substantive law of the state of incorporation to determine what, in fact, is the demand requirement. Our position is that under Pennsylvania law, there is no demand requirement in a 50-50 closely held corporation. Now that law comes from, and Judge Keeley did an analysis in her opinion indicating that under Pennsylvania law, the futility requirement was deleted in the Cooker case when the Pennsylvania Supreme Court adopted the ALI principles of corporate governance, specifically 703, which requires a demand be made, but the exception is unless there's irreparable injury. That's fine, and that's where Judge Keeley stopped. However, the problem was she didn't apply the correct standard. The Cooker court, that was a case of a public corporation. It did not address the case of a closed corporation. In Cooker, the Pennsylvania Supreme Court indicated that our failure to adopt other sections of the ALI principles of governance does not mean we don't accept them or approve of them. It's just that it's not applicable to this case, and we encourage the courts of the Commonwealth to look to it if it aids and assists in your benefit, helps you decide cases where the facts are appropriate, and specifically, the Supreme Court said, look to the procedural aspects of the other sections of 701D. Long comes the Hill case in 2014, which is a Pennsylvania Superior Court case, and I might indicate in the interim, about half a dozen Pennsylvania common pleas courts adopted 701D, both substantively and procedurally, and two district courts. The Cooper court in the Western District of Pennsylvania applied 701D, and the district court in the Eastern District under the Needler case applied 701D, and what 701D is that it gives the discretion of the trial court in appropriate circumstances to treat a derivative claim of a direct action and to dispense with certain procedural requirements. So 701D has two aspects. One is the procedure, is the substantive provision of that act, which says the court has a discretion to treat a derivative claim as a direct claim in appropriate circumstances, and the second is do away with the procedural aspects, which in this case were the demand. There was already a 701D below, did you? I think we brought that up after the court dismissed it, Your Honor, because that was not an issue. After the court dismissed it, we did raise it. You raised it where? I believe we raised it in our certification pleadings and the post-trial amendment. I don't think there was an issue, Your Honor, where we could have raised it because the court didn't do it until maybe a week before trial. She cited the Hill case, but we never went to the next aspect, Your Honor. She dismissed the case right before, the week before trial based upon this aspect. So the issue was never there. So let me just get, let me understand your argument. You didn't argue this because you didn't think it was worthwhile arguing or because I just don't understand what you're saying. No, it never came up, Your Honor. What do you mean it never came up? She rules against you, is that what you're saying? She ruled, what she did, she issued an opinion and she did not rule against us at that point. It's when she did it the second time and she entered another and dropped all the cases. So. Did you brief the arguments before her, before that second opinion was issued? We did, Your Honor. I believe we. Did you raise 701? I believe we did, Your Honor. Okay. I'm sorry. I believe we did and it was our post-trial. I thought we did, Your Honor, post-trial. It was our post, whatever it was. Can I just, I think I have a very similar question, so. Although I, let me, let me try just slightly differently. So what I understood the district court to say was, look, you didn't plead this with sufficient particularity. That's right. The only, reading your pleading as generously as I can, and I read the pleading too, the complaint, maybe I see in here an allusion to futility. Would it mean futile for us to make this demand? But futility, we can all agree, is no longer an exception under Pennsylvania law. I don't see anything in the complaint that goes through the 701D factors. So I don't see how, whether or not 701D is the law in Pennsylvania, I certainly don't see a pled in the complaint. So then why aren't you dismissed because you didn't plead it? Well, if that's the law, Your Honor, that we don't have to plead it. No, you, I don't, what do you mean you don't have to? I don't think that. You don't have to put in your complaint the facts that would allow the district court judge to make a 701D analysis. This wouldn't, whatever it is, it wouldn't hurt the corporation. I can't remember the three factors. Well, we're not asking, we're not asking the court, and maybe I'm misunderstanding your question, we're not asking the court to treat this as a direct claim, as the substantive portions of 701D. We're just saying that ever, the procedural aspects of 701D, we would not have to raise the demand rule under 23-1 because you look to the substantive law of Pennsylvania. If the substantive law of Pennsylvania is you do not have to make a demand, then it would be superfluous and we would not have to read that. But we're not, we're not saying, Your Honor, adopt 701D. The claim 701 excuses you from making a demand. That's correct. Right? So you have to tell the district court why that's so. You otherwise would have to make a demand under Federal Rules Civil Procedure 23-1. Right? That's what, that is procedural aspect. I understand what Your Honor is saying, but we don't see why we would have to tell the court it's excused if the law is that it's excused. Maybe I have, I'm having trouble because I don't seem to have 701D in front of me. I thought 701D, but maybe I'm thinking about a wrong part of it. I thought it was sort of a thing that said the district court has to make these three findings that allow any exception, wouldn't harm the corporation or the creditors. No, that's not what 701D is. That is the substantive portion of 701D. And the Hill court and subsequent courts have specifically rejected that, that saying Pennsylvania, that portion of 701D conflicts with Pennsylvania law. And therefore we believe that the Supreme Court of Pennsylvania would not adopt 701D in total. So what do you think they would adopt? But what Hill said, and it changed the law, Hill said, we believe that the Supreme Court of Pennsylvania in appropriate circumstances would adopt the procedural aspects. What are the procedural aspects? The procedural aspect is waiver of, demand. No demand is required in a closely held corporation. Okay. Where is that found at JA? So that we can all look at this together. Okay. Where is that? You're saying there's some portion of 701D that talks about you don't have to have a demand. So even if you haven't met those three factors, you just never have to have a demand. Right. That's right. That's what we want to see. I see what you're saying. Well, that's not what Hill just says. We believe that the court in appropriate circumstances would waive the procedural aspects, the demand aspects. Now, until you get to those requirements, the requirements being that you avoid the multiplicity of litigation, which is true. The court has to find that. But you say that that's not applicable. Right. The court wouldn't have to make those findings. You think Pennsylvania law is that allowing a court to make those findings and then waive the demand requirement would be inconsistent with Pennsylvania law. But what would be consistent with Pennsylvania law is allowing the district court to waive the demand thing without making the findings. That's inappropriate. Yes, Your Honor. That would be inappropriate circumstances. I'm striking it as slightly counterintuitive. But I understand where it would be. Did we say that in our pleadings? The fact of the matter is that it would apply because there are only two shareholders. You don't endanger multiplicity. You're not going to have a problem in distribution of assets because of only the two shareholders. And there's no prejudice to either party. Because I did not. I did not plead that. So the judge thought the only argument you were making was futility. Because you didn't plead that. That's yes, Your Honor. I think our point is we never had to. That's our point. The second issue, Your Honor, relates to the other ability of Dr. Swart to bring the breach of contract claim on behalf of MRA. One, if it, in fact, was derivative suit, then he would have the ability. Two, as the president, he has the ability to bring that breach of contract claim against Dr. Swart as an employee. Now, the court indicated that Dr. Pawar has no ability to bring a claim against a 50-50 shareholder, which relates to the prior claims. But the breach of contract claim, Dr. Pawar brings in the capacity as the president of the corporation who has the authority to bring an action against third parties. Now, Judge Keeley indicated that this type of a breach of contract case against an employee an individual, and she termed it, and she indicated in her opinion that MRA, when it sued Dr. Johnson, that was within the authority of Dr. Pawar to sue Dr. Johnson for breach of contract because that was a claim owing, it was a third-party claim. Our position is that when he filed the breach of contract claim against Dr. Swart, that was also within his purview and his authority because he brought it as a breach of contract claim against an employee on behalf of the corporation. Now, Dr. Swart argues, well, you can't separate the two because she was a 50% shareholder. However, Dr. Swart also argues or asserts that she isn't signed the employment agreement in her individual capacity and that she was an employee and that there was a distinction. That's the argument. We agree with Dr. Swart there, that there's a distinction between Dr. Swart as an individual and as a 50% shareholder. And in this case, Dr. Pawar, consistent with Judge Keeley's rationale for bringing third-party claims, had the ability and authority to sue Dr. Pawar for breach of contract, just as he would have the authority to sue Dr. Ridgway or Dr. Caruso or Dr. Popovich for breach of their employment contract. We believe that he had the authority and that is not inconsistent with the Court's finding. We'd also comment, Your Honor, on the remand issue and the application of Pennsylvania law. Creeley believed that Pennsylvania law does apply in this case under the internal affairs doctrine that that is one of the fundamental principles of the internal affairs doctrine, that when there's a claim for breach of fiduciary duty, that nothing's more fundamental to the internal affairs of a corporation than a breach of fiduciary obligations. And in that case, courts have consistently applied the rule of the state of incorporation, which is Pennsylvania. Now, plaintiff argues that there should be expectations that West Virginia law applies. Judge Keeley correctly found that the state of incorporation is Pennsylvania. The articles of incorporation clearly indicate that the office is in Pennsylvania. The shareholders agreement indicates that the corporation will be governed or the shareholders agreement will be governed under the laws of the Commonwealth of Pennsylvania. And that all the monetary transactions occurred in Pennsylvania. This corporation earned millions of dollars. All went in Pennsylvania. Legal aspects of the corporation are in Pennsylvania. And that it is not such an unusual circumstance as to avoid or ignore the internal affairs doctrine in this matter. In fact, it should be governed under Pennsylvania law. The final issue relates to the damages asserted by Dr. Swart. You can't just look at what she says here now, but we must go back to the pleadings and what she actually said in the pleadings and in her documents. Everything that Dr. Swart has pled relates to her damages stemming from the breach of the termination of MRA. She blames that on Dr. Pawar that because MRA was dissolved, MRA lost the contract. We all lost income, which is true. But that is harm to the corporation itself, derivative to both Pawar and Swart. Therefore, all her damages, as Judge Keeley correctly pointed out, are derivative. Now, Planoff asserts that one of her claims in the fraud action is that Dr. Pawar made comments to the board at Montgomery General Hospital that she did not have all of her credits. Well, that's not a fraud claim. The fraud there has to be reliance by her. You have statement, reliance, and damages. The record will show, or the discovery will show, in fact, that Dr. Swart earned more money than Dr. Pawar. So there's no underlying, even the fact that regarding her damages, this is not a fraud claim. It was a comment made to a third party. Other than that, all of Dr. Swart's claims, if you look at the pleadings and the claims for relief, they all are derivative and relate to claims because of her loss of income from MRA and its devaluation as an asset, the word she used, disintegration. So unless the court has any questions. Thank you very much. Thank you. I will be brief. JA 1549 is the reference in the appendix to Section 7.01d that the court inquired about. And just so that it's. So you're saying he did make the argument? He did. This is the most extraordinary rebuttal I've ever heard. And here's the reason why I said that, Judge Motz, because if. Okay, I'm looking at it because you thought it was worth talking about, so I'm going right to it. If you rule for the appellee on that issue, then it requires the court to rule for my client on that issue because there are identical issues. Those relate to the fraud and breach of fiduciary duty claims that both Dr. Pawar and Dr. Swart had against each other. Did you make this argument too? Did you show me where they made the argument? So did you make it? We didn't. So you haven't preserved it, but he has. No, but it applies equally to both parties because both. Not if you waive it. Well, we don't think it was brought to the court's attention. You just showed me where it was brought to the court's attention in 1547. It was. That's our point. Our point is, Judge Motz, we went to the pretrial hearing. Judge Keeley cut some of the case back and said the only thing that's remaining are these unfiduciary duty competing claims that both sides have. And then she said, but I want you to brief this issue. So then the issue was raised. I mean, it's in their brief. It wasn't a 701 D issue is in their brief at JA 1483. And that brief came. I mean, was it 1547? Wait, wait, wait, wait, wait, wait, wait. Sorry, sorry, sorry. I was looking at the court's opinion. The page is JA 1549. In the lower bottom, it says, in support of his position that a direct suit is possible, the appellant and Hill relied on section 701 D of the ALI principle of corporate governance. And there it says, in the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action. And then it goes on to talk about the three points that counsel for the appellee talked about. And the point is that issue was raised before the district court dismissed the claims that relate to that very issue, the fraud claim and breach of fiduciary duty claim, which were identical on both sides. And so that's why we think it's helpful for the court to point out if you rule that way, in one case, given the undisputed procedural posture, we think it incumbent upon the court to rule it for both parties. And finally, the reference to West Virginia law that Judge Harris inquired about, and I said the Webco case, it's Macenter v. Webco 262 SE 2nd 433, West Virginia 1980, which is the case which talks about shareholder oppression and seems to indicate the ability, although not specifically, the ability to say that we think West Virginia law would have been more favorable to us, and that's the difference it makes because we pled in the complaint that Dr. Puar was running the corporation as if it was his own. Thank you very much. Thank you. We will come down and greet the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, Stephanie D. Thacker, Pamela A. Harris